STUART DELERY
Acting Assistant Attorney General, Civil Division

MELINDA HAAG (CABN 132612)
United States Attorney for the Northern District of California

MAAME EWUSI-MENSAH FRIMPONG (CABN 222986)
Deputy Assistant Attorney General, Civil Division

MICHAEL S. BLUME (PA 78525)
Director, Consumer Protection Branch

ADRIENNE E. FOWLER[*]
Trial Attorney, Consumer Protection Branch, U.S. Department of Justice
450 5th St. NW, Room 6400
Washington, DC 20530
(202) 514-9471
(202) 514-8742 (fax)
Adrienne.E.Fowler@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:12-cv-04177-SI |
| | ) | |
| Plaintiff, | ) | **UNITED STATES' RESPONSE** |
| | ) | **TO CONSUMER WATCHDOG'S** |
| v. | ) | **AMICUS CURIAE BRIEF** |
| | ) | |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

---

[*] Member in good standing of the New York Bar, which does not issue bar numbers.

UNITED STATES' RESPONSE TO AMICUS CURIAE                    3:12-cv-04177-SI

## TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………………………..ii

I.    BACKGROUND ........................................................................................................ 1

II.   ARGUMENT ............................................................................................................ 2

   a.   The proposed order is procedurally fair............................................................ 4

   b.   The proposed order is adequate, reasonable, and substantively fair................... 5

   c.   Consumer Watchdog's arguments to the contrary lack merit.............................. 7

     1.   No additional injunctive relief is necessary. ................................................ 8

     2.   The civil penalty is adequate, reasonable, and fair. ...................................... 9

     3.   Google's denial of liability does not impede the public interest................... 12

III.  CONCLUSION ....................................................................................................... 15

## ATTACHMENTS

Declaration of Megan A. Bartley……………………………………………..Exhibit A

TABLE OF AUTHORITIES

FEDERAL CASES

*Arizona Oddfellow-Rebekah Hous. Inc. v. U.S. Dep't. of Hous. & Urban Dev.*,
125 F.3d 771 (9th Cir. 1997) ........................................................................... 13-14

*FTC v. Circa Direct LLC*,
No. 11-cv-2172, 2012 WL 3987610 (D.N.J., Sept. 11, 2012).......................................... *passim*

*FTC v. Civic Development Group*,
No. 07-cv-04593 (D.N.J. Mar. 29, 2010).................................................................. 11

*FTC v. Reebok Int'l Ltd.*,
No. 11-cv-2046 (N.D. Ohio Sept. 29, 2011).............................................................. 13

*FTC v. Skechers U.S.A., Inc.*,
No. 12-cv-1214, (N.D. Ohio July 12, 2012) ............................................................. 13

*Heckler v. Cheney*,
470 U.S. 821 (1985)............................................................................................. 7

*In the Matter of Google Inc.*,
FTC Docket No. C-4336 (Aug 9, 2012) ................................................................... 6

*Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*,
616 F.2d 1006 (7th Cir. 1980) .............................................................................. 13

*Payne 22, Inc. v. United States*,
762 F.2d 91 (Temp. Emer. Ct. App. 1985).............................................................. 7

*Rufo v. Inmates of Suffolk Cnty. Jail*,
502 U.S. 367 (1992)............................................................................................. 2

*SEC v. Citigroup Global Mkts., Inc.*,
673 F.3d 158 (2d Cir. 2012)........................................................................... 6, 12-13

*SEC v. Citigroup*,
827 F. Supp. 2d 328 (S.D.N.Y. 2011).................................................................... 12

*SEC v. Olins,*

762 F. Supp. 2d 1193 n.3 (N.D. Cal. 2011) ....................................................... 13-14

*SEC v. Randolph,*

736 F.2d 525 (9th Cir. 1984) .................................................... 3, 5-6, 10, 13

*Swift & Co. v. United States,*

276 U.S. 311 (1928) ........................................................................ 13

*Turtle Island Restoration Network v. U.S. Dep't of Commerce,*

834 F. Supp. 2d 1004 (D. Haw. 2011), ......................................... 3, 13-14

*United States v. Alpine Indust., Inc.,*

352 F.3d 1017 (6th Cir. 2003) .......................................................... 9

*United States v. Chevron,*

380 F. Supp. 2d 1104 (N.D. Cal. 2005) ......................................... 3-5

*United States v. ChoicePoint, Inc.,*

No. 06-cv-0198 (N.D. Ga. Oct. 14, 2009) ....................................... 13

*United States v. Civic Dev. Grp,*

No. 07-04593(Sept. 24, 2007) ......................................................... 11

*United States v. Colorado,*

937 F.2d 505 (10th Cir. 1991) ........................................................... 4

*United States v. Danube Carpet Mills,*

737 F.2d 988 (11th Cir. 1984) ......................................................... 9-10

*United States v. J.B. Williams Co.,*

498 F.2d 414 (2d Cir. 1974) ............................................................... 9

*United States v. McInnes,*

556 F.2d 436 (9th Cir. 1977) ............................................................. 2

*United States v. Oregon,*

913 F.2d 576 (9th Cir. 1990) .......................................................... 3, 5

*United States v. Pac. Gas & Elec.,*

776 F. Supp. 2d 1007 (N.D. Cal. 2011) ......................................... 3-5

*United States v. Prochnow*,

No. 02-cv-0917 (N.D. Ga. June 6, 2003) ............................................................... 13

*United States v. Reader's Digest Ass'n*,

662 F.2d 955 & n. 18 (3d Cir. 1981) ...................................................................... 9

*United States v. Ward Baking Co.*,

376 U.S. 327 (1964) ............................................................................................... 15

FEDERAL STATUTES

15 U.S.C. § 45(l) ............................................................................................. 2, 6, 8

FEDERAL REGULATIONS

16 C.F.R. § 1.98(c) ............................................................................................... 2

16 C.F.R. § 2.32 .................................................................................................. 14

The proposed stipulated order fairly, adequately, and reasonably addresses the allegations contained in the complaint.  Furthermore, in approving the settlement, the Federal Trade Commission has reasonably determined its terms are in the public interest.  Therefore, the parties' settlement should be entered without further delay.  Amicus curiae Consumer Watchdog's suggestions to the contrary are without merit.

## I.    Background

This lawsuit arises from Google's alleged violation of an FTC administrative order.[1]  In this earlier case, the FTC alleged that Google made misrepresentations to consumers during the launch of Google Buzz, a social networking tool.  Pursuant to a settlement, the Commission issued an order on October 13, 2011, which enjoins Google from making any future misrepresentations to consumers about the privacy of their information and from misrepresenting the extent to which it is a member of or complies with a government or self-regulatory privacy compliance program.  *See* Compl. (D.E. 1), Ex. A at 3.[2]  The Commission's order also requires Google to obtain affirmative consumer consent before sharing certain information with third parties, implement a comprehensive privacy program designed to protect consumer privacy, and provide regular privacy assessments conducted by an independent third-party.  *See id.* at 3-5. Google is subject to this order for the next twenty years.  *See id.* at 7.

In the present action, the United States has alleged that Google violated the Commission's order by representing to consumers that it would not place certain tracking cookies or serve targeted advertising based on those cookies to consumers who: (1) used the Safari browser, and (2) retained Safari's default privacy settings.  However, Google circumvented Safari's privacy settings, such that consumers who retained Safari's default

---

[1] Throughout this brief, "Google" refers to Google Inc. and its subsidiaries, including DoubleClick.

[2] Specifically, the order prohibits Google from misrepresenting "the purposes for which it collects and uses" certain information about consumers and "the extent to which consumers may exercise control over the collection, use, or disclosure" of that information.  *See* Compl. (D.E. 1), Ex. A at 3.

privacy settings were not shielded from those tracking cookies or targeted advertisements from

Google.  Compl. ¶¶ 49-54.  Furthermore, the United States alleges that Google misrepresented its

compliance with Network Advertising Initiative's Code of Conduct, a self-regulatory code that

requires truthful disclosures to consumers about how companies collect and use information

about them.  *Id.* ¶¶ 55-57.  The United States contends that these actions violate the earlier FTC

order, and that Google is consequently liable for civil penalties and injunctive relief under 15

U.S.C. § 45(*l*).[3]

   After arms-length negotiation, Google and the FTC agreed to a resolution of this dispute

through a stipulated order.  The proposed order provides for a civil penalty of $22.5 million.

Proposed Stipulated Order (D.E. 3-1) at 3.  It also contains injunctive relief requiring Google to

maintain systems that will disable tracking cookies that may have been placed as a result of

Google's misrepresentations, and for Google to report to the FTC setting forth how it has

complied with this requirement.  *Id.* at 3-4.  Although Google denies violating the Commission's

order and liability for the claims set forth in the complaint, the company concedes all

jurisdictional facts and that the complaint states a valid claim against it.  *See id.* at 2.  The

proposed consent order is before the Court for entry.  *See* Joint Motion to Enter Proposed

Stipulated Order (D.E. 3).

## II.     Argument

   Courts have long favored the use of consent decrees to resolve disputes.  *Rufo v. Inmates
of Suffolk Cnty. Jail*, 502 U.S. 367, 407 (1992) (noting the Supreme Court's longstanding policy
of favoring consent decrees); *United States v. McInnes*, 556 F.2d 436, 441 (9th Cir. 1977) (''We

---

   [3] "Any person, partnership, or corporation who violates an order of the [Federal Trade]
Commission after it has become final, and while such order is in effect, shall forfeit and pay to
the United States a civil penalty of not more than $10,000 for each violation, which shall accrue
to the United States and may be recovered in a civil action brought by the Attorney General of
the United States. . . .  In such actions, the United States district courts are empowered to grant
mandatory injunctions and such other and further equitable relief as they deem appropriate in the
enforcement of such final orders of the Commission." 15 U.S.C. § 45(*l*); *see also* 16 C.F.R.
§ 1.98(c) (adjusting the maximum per-violation penalty to $16,000 pursuant to the Federal Civil
Penalties Inflation Adjustment Act).

are committed to the rule that the law favors and encourages compromise settlements.'').

Consequently, a consent decree should be approved unless it is "unfair, inadequate, or

unreasonable."  *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984); *accord United States v.

Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1024 (N.D. Cal. 2011) (Illston, J.) ("A court reviews a

consent decree to determine whether the decree is 'fundamentally fair, adequate and

reasonable.'" (quoting *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990))).[4]  In the

Ninth Circuit, courts use a two-step process to evaluate a proposed consent decree, looking to the

substance of a consent decree only after evaluating procedural fairness.  *See, e.g.*, *Oregon*, 913

F.2d at 581; *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1024; *Turtle Island Restoration Network v.

U.S. Dep't of Commerce*, 834 F. Supp. 2d 1004 (D. Haw. 2011), *aff'd* 672 F.3d 1160 (9th Cir.

2012); *United States v. Chevron*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2005).  Here, the

settlement is the product of a fair process and, as a result, this Court must presume that the

proposed order is fair, reasonable, and adequate.  *Oregon*, 913 F.2d at 581.  Indeed, Consumer

Watchdog does not come close to meeting its "heavy burden of demonstrating" that the

settlement is unfair, inadequate, or unreasonable.  *See id.* (internal quotation omitted).   Nor

could it.  The proposed order includes the largest fine ever imposed for a violation of an FTC

administrative order and remedies the potential for ongoing consumer harm.  Accordingly, the

proposed order should be entered by the Court.

---

    [4] Consumer Watchdog incorrectly asserts that the United States is bound by the FTC's
articulation of the standard of review in an out-of-circuit case that was brought pursuant to a
different statutory provision.  *See* Mem. P. & A. in Opp'n to Entry of [Proposed] Stipulated
Order for Permanent Inj. & Civil Penalty J. (D.E. 13) at 12-13 ("Amicus Brief") (citing *FTC v.
Circa Direct LLC*, No. 11-cv-2172 (D.N.J.)).  In the first instance, Consumer Watchdog
misquotes the standard contained in the FTC's *Circa Direct* brief.  There, the FTC actually
argued that "[a] district court reviews a proposed consent decree to ensure it is fair, reasonable,
adequate, and serves the public interest as articulated in the underlying statute."  Pl. FTC's
Submission Supporting Entry of Proposed Stipulated Final Judgment & Order, *FTC v. Circa
Direct LLC*, No. 11-cv-2172 (D.N.J. Mar. 14, 2012).  In any event, the United States has a duty
to point this Court to relevant, jurisdiction-specific case law, and the Ninth Circuit and this Court
have articulated the applicable standard of review slightly differently than some other courts—
including the District of New Jersey.

UNITED STATES' RESPONSE TO AMICUS CURIAE                          3:12-cv-04177-SI

### a. The proposed order is procedurally fair.

The touchstone of procedural fairness is whether the parties maintained their status as adversaries during the course of negotiations, or whether the consent decree is a "product of collusion." *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025 (quoting *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir. 1991)).  Here, the consent decree was the result of extensive, hard-fought negotiation.  After the FTC discovered the conduct at issue in this case, it conducted an independent investigation into the facts, rather than simply relying on Google's representation of what occurred.  Bartley Decl. (attached as Ex. A) ¶ 2; *see also Chevron*, 380 F. Supp. 2d at 1112 (suggesting that courts may consider an agency's development of the facts in a case, but upholding as procedurally fair a consent decree even where an agency conducted no independent investigation).  The FTC proposed the initial version of the consent decree.  Bartley Decl. ¶ 3. The parties then engaged in extensive negotiation, including frequent—and often daily—debate for more than two months, during which the FTC forcefully argued its position and insisted on provisions it deemed important for consumers.  *See id.* ¶¶ 4-5, 8; *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025 (upholding as procedurally fair consent decree negotiations lasting ninety days). Indeed, the substantive terms of the proposed order were included at the FTC's behest.  *See* Bartley Decl. ¶ 5; *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025 (determining that when an agency proposed a draft decree and ensured some of its terms wound up in the final settlement, the agency had not engaged in collusion because it had not "simply accepted whatever [defendant] wanted").  Moreover, although the FTC accepted some of Google's suggested changes to the Commission's initial settlement offer, the provisions that Consumer Watchdog disputes— Google's denial of liability and the civil penalty amount—were the product of negotiation, not collusion.  *See Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025  ("The fact that the United States accepted several of [defendant's] requested changes [to the settlement] does not mean that the settlement process was unfair or collusive.").[5]

---

[5] As discussed *infra* Section II.c.1, the FTC also considered and rejected certain injunctive provisions after determining that they were not in consumers' best interests.

UNITED STATES' RESPONSE TO AMICUS CURIAE
4

3:12-cv-04177-SI

Consumer Watchdog's insinuation that the process was deficient—which is based on nothing more than unsupported supposition—is simply incorrect.  Indeed, the sole basis for its allegations is that:  (1) the complaint contained boiler-plate language asking the Court to enjoin Google from future violations of the Commission's order; and (2) the title of the proposed order contains the phrase "Permanent Injunction."[6]  From these facts, it leaps to the incredible conclusion that, because the proposed order does not specifically enjoin future violations of the administrative order, the FTC "knuckled under" at the last minute in settlement negotiations or, at least, "relied heavily" upon Google "in crafting the settlement."  *See* Mem. P. & A. in Opp'n to Entry of [Proposed] Stipulated Order for Permanent Inj. & Civil Penalty J. (D.E. 13) at 16-17 ("Amicus Brief").  These baseless accusations are soundly refuted by the facts.

> **b.  The proposed order is adequate, reasonable, and substantively fair.**

Where a consent decree is "the product of good faith, arms-length negotiation"—that is, where it is procedurally fair—it is "presumptively valid," and an "objecting party has a heavy burden of demonstrating" it is substantively unfair, inadequate, or unreasonable.  *Oregon*, 913 F.2d at 581 (internal quotation omitted).   In examining whether this presumption is overcome, the Court engages in a form of "rough justice," asking not whether one or both parties got the best deal possible, but rather whether the "decree represents a reasonable factual and legal determination."  *Id.*; *see also Pac. Gas & Elec.*, 776 F. Supp. 2d at 1024 ("[T]he Court does not determine whether the settlement is one which the court itself might have fashioned, or considers ideal.").  Furthermore, in evaluating a consent decree to which a government agency is a party, "courts should pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment."  *Randolph*, 736 F.2d at 529; *see also Chevron*, 380 F. Supp. at 1111 (deference to a represented federal agency's decision to become party to a consent decree is "particularly strong" where the agency "is an expert in its field").  Indeed, the Ninth

_____

[6] Notably, the proposed stipulated order *will* contain a permanent injunction once entered, namely, the remediation and reporting requirements discussed in further detail below.  *See* *Black's Law Dictionary* (9th Ed. 2009) (defining an injunction as any "court order commanding or preventing an action" and noting that "[d]espite its name, a permanent injunction does not necessarily last forever" but rather is synonymous with a "final injunction").

UNITED STATES' RESPONSE TO AMICUS CURIAE                                          3:12-cv-04177-SI

Circuit has specifically admonished district courts not to "condition[] approval of the consent decree on what it considered to be the public's *best* interest.  Instead, the court should . . . *defer[] to the agency's decision that the decree is appropriate* and simply ensure[] that the proposed judgment is reasonable."  *Randolph*, 736 F.2d at 529 (second emphasis added); *see also SEC v. Citigroup Global Mkts., Inc*., 673 F.3d 158, 164 (2d Cir. 2012) ("[T]he scope of a court's authority to second-guess an agency's discretionary and policy-based decision to settle is at best minimal.").

Here, the imposition of a $22.5 million civil penalty—the largest fine ever imposed for violation of an FTC administrative order—and requiring Google to remediate the violation constitutes a fair, adequate, and reasonable settlement to the dispute at issue, and is in the public interest.  As the Commission explained, the "swift imposition of a $22.5 million fine" will help to promote Google's future compliance.  Statement of the Fed. Trade Comm'n at 2, *In the Matter of Google Inc.*, FTC Docket No. C-4336 (Aug 9, 2012) ("Comm'n Statement").  It also sends an unequivocal message to other companies under order that the FTC will vigorously enforce its orders and that a defendant's failure to comply carries a significant cost.  Accordingly, the proposed order furthers the FTC's mission of consumer protection by deterring future order violations and allowing the Commission to use its scarce resources on other enforcement initiatives.

In terms of injunctive relief, the proposed stipulated order fairly, adequately, and reasonably remedies potential ongoing harm.  In February 2012, Google began disabling the tracking cookies it had set on Safari browsers contrary to its representations to consumers.  The proposed order would require Google to complete its remediation by February 2014, and report to the FTC explaining how it has complied.  Consequently, the proposed order shields consumers from potential continued harm.

Additionally, should Google make future misrepresentations to consumers in violation of the Commission's previous order, the United States retains the power to bring another suit in district court, as it did in this case.  *See* 15 U.S.C. § 45(*l*).  The broad injunctive relief of that order prohibits, among other things, *any* misrepresentation to consumers about the privacy of

their information provides strong protection for the privacy of consumers' information; indeed, Consumer Watchdog has not identified a single privacy misrepresentation that the order would not cover.

### c.  Consumer Watchdog's arguments to the contrary lack merit.

The majority of Consumer Watchdog's brief contains a litany of allegations that Google has behaved badly and that the FTC's past action against Google has been insufficient, rather than a legal attack on the substance of the proposed order.  Even if Consumer Watchdog's revisionist history were true (which it is not),[7] such arguments are irrelevant to the issue before this Court: whether the proposed order is fair, adequate, and reasonable.[8]

Consumer Watchdog's legal arguments against entry of the decree are also flawed.  It attempts to supplant the Commission's judgment with its own based on three theories—none of which is grounded in fact or law.  First, it contends that the proposed order would leave the Commission without adequate redress in the event of further violations, despite the fact that the Commission retains a statutory remedy for enforcement of its earlier administrative order.  Second, it asks this Court to overturn the largest civil penalty ever for a violation of an FTC order on the grounds that the penalty is insufficient, even though the civil penalty is many times the profit Google earned from its violations.  Last, it incorrectly contends that Google's denial of liability undercuts the public interest served by the parties' settlement.

---

[7] Consumer Watchdog's attempt to suggest that the FTC's enforcement approach to Google has been lax is belied by the facts.  In the past two years, the FTC has sued Google twice, culminating, in the first instance, in a comprehensive order that protects consumers' privacy interests and, in the second, a record-breaking civil penalty.  These actions make clear Consumer Watchdog's central thesis is flawed.

[8] Whether to pursue an enforcement action in any given case is "committed to an agency's absolute discretion" and unreviewable in court.  *Heckler v. Cheney*, 470 U.S. 821, 830 (1985).  And Consumer Watchdog seemingly posits that the underlying Commission order is not as broad as the group would have liked, which is similarly irrelevant to this action.  *See Payne 22, Inc. v. United States*, 762 F.2d 91, 93 (Temp. Emer. Ct. App. 1985) (holding that, where private parties have a separate cause of action against a defendant, "they may not intervene or participate in [an agency's] enforcement proceeding").

### 1. No additional injunctive relief is necessary.

Consumer Watchdog's argument that the proposed order is deficient because it does not permanently enjoin Google from violating the FTC's order, *see* Amicus Br. at 16-17, is based on two faulty premises. First, Consumer Watchdog completely ignores that the Commission's previous order already provides comprehensive injunctive relief, including prohibiting any misrepresentations related to the privacy of users' information for twenty years. *See* Compl. (D.E. 1), Ex. A at 3.[9] The FTC needs no additional tools to enforce the broad injunctive language of this earlier order. Rather, it can enforce its order through 15 U.S.C. § 45(*l*), as it did in this case.[10]

Second, although Consumer Watchdog argues that the proposed order should have enjoined Google from future violations of the Commission's order, it does not identify any additional injunctive relief necessary to protect consumers. The FTC, on the other hand, considered numerous possibilities when crafting the proposed order and appropriately arrived at injunctive terms that protect the public going forward. For example, the FTC considered whether Google should be prohibited from placing certain types of cookies on users' browsers. *See* Bartley Decl. ¶ 7. However, the FTC rejected this proposal because it was outweighed by the risk that it would hinder Google's ability to protect consumers from data security or malware vulnerabilities. *See id.* After considering an array of alternatives, the FTC ultimately determined that the remediation in the proposed order sufficiently protects consumers from ongoing harm without exposing them to additional risks.

---

[9] As discussed in Section I, the order also requires Google to obtain affirmative consumer consent before sharing certain information with third parties, implement a comprehensive privacy program designed to protect consumer privacy, and provide regular privacy assessments conducted by an independent third-party.

[10] In passing § 45(*l*), Congress provided the FTC with a way to vindicate its authority and prevent violations of its administrative orders. In arguing that the civil penalties and injunctive relief that could be sought in a future § 45(*l*) suit are per se inadequate to prevent or adequately remedy a violation of an FTC order, Consumer Watchdog flouts Congress's judgment as well as that of the FTC.

### 2.   The civil penalty is adequate, reasonable, and fair.

Consumer Watchdog's next argument, that the settlement amount is too low to be in the public interest, is also unavailing.  First, Consumer Watchdog argues that the $22.5 million civil penalty should be rejected because it represents a *de minimis* amount of Google's profit or revenues.  However, this argument ignores that the Commission's determination of an appropriate civil penalty must involve a multi-faceted analysis.  *See, e.g.*, *United States v. Danube Carpet Mills*, 737 F.2d 988, 993 (11th Cir. 1984) (noting that the following factors should be assessed in setting a civil penalty amount: "(1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendants' ability to pay; (4) the desire to eliminate the benefits derived by the violations; and (5) the necessity of vindicating the authority of the FTC" (citing *United States v. Reader's Digest Ass'n*, 662 F.2d 955, 967 & n. 18 (3d Cir. 1981); *United States v. J.B. Williams Co.*, 498 F.2d 414, 438-39 (2d Cir. 1974))); *accord United States v. Alpine Indust., Inc*., 352 F.3d 1017 (6th Cir. 2003).  It also disregards that the FTC's goal was to levy a penalty that appropriately deters future order violations and encourages businesses to take consumers' privacy seriously.  Accordingly, the Commission must examine a number of factors, including the benefit obtained by the alleged violator and the harm suffered by consumers.

Here, the complaint did not allege that the conduct at issue—misrepresenting that it would not place tracking cookies on Safari users' computers—yielded significant revenue for Google.  Moreover, although the precise number of consumers who viewed the misrepresentation is uncertain, only a small subset of Safari users viewed the misrepresentation and were therefore harmed in violation of the Commission order.  Furthermore, it is difficult to place a dollar value on the harm suffered by consumers.  Thus, a "per violation" calculation of an appropriate penalty is difficult to arrive at with any precision.

Balancing these factors against the need to vindicate its order and deter future violations, the Commission determined that the $22.5 million fine was appropriate.  This is because Google's penalty was many times over the upper-bound of what the FTC estimates the company

earned from the alleged violation,[11] thereby removing any economic incentive for similar conduct in the future and promoting "the desire to eliminate the benefits derived by the violations" and "the necessity of vindicating the authority of the FTC."[12]  *Danube Carpet Mills*, 737 F.2d at 993.  Moreover, the reputational impact from having been subject to the largest civil penalty ever levied for an order violation acts as an additional deterrent to future order violations.  The penalty is also more than sufficient to place other companies on notice that the Commission will respond swiftly and vigorously to order violations.

Although Consumer Watchdog emphasizes that Commissioner Rosch raised concerns in his dissenting statement about the civil penalty in comparison to Google's overall revenue, this fact underscores that the proposed stipulated order should be entered.  Indeed, the statements by Commissioner Rosch and the Commission are evidence that the bi-partisan Commission fully considered—and rejected—the concerns raised by Consumer Watchdog and determined the settlement to be adequate and in the public interest.  Consumer Watchdog's attempt to have this Court second guess the Commission's judgment on this issue should be rejected.  *See Randolph*, 736 F.2d at 529.

---

[11] The FTC estimates that Google earned no more than $4 million from the alleged violation.  *See* Bartley Decl. ¶ 6.

[12] Consumer Watchdog argues that the civil penalty amount is insufficient to deter Google from violating the Commission order in the future because, among other things, the penalty "fails to account for the money a violator can make from its conduct" and "would have to be truly gargantuan to affect the cost-benefit analysis of a company in Google's position."  *See* Amicus Br. at 20-21.  This argument, however, is contrary to the facts and makes no sense.  Google's penalty was many times the upper-bound of what the FTC independently estimated the company earned from the alleged violation.  Consumer Watchdog offers no calculations showing otherwise, instead engaging in fact-free, armchair economics to assert that the settlement "manifestly" fails to deprive Google of the benefit of its alleged wrongdoing.  *Id.* at 19.  Assuming (as Consumer Watchdog does) that Google is a profit-maximizing company, it makes no sense for it to engage in a behavior that costs more than the revenue it would earn—a fact which underscores that the civil penalty in this case, which was a multiple of the estimated revenue Google earned from the alleged order violation, should promote compliance with the Commission order.

UNITED STATES' RESPONSE TO AMICUS CURIAE                                    3:12-cv-04177-SI

Second, Consumer Watchdog erroneously compares the Google settlement to monetary settlements in fraud cases such as *FTC v. Circa Direct LLC*, No. 11-cv-02172 (D.N.J. Sept. 11, 2012), and *FTC v. Civic Development Group*, No. 07-cv-04593 (D.N.J. Mar. 29, 2010), noting that settlements in these cases required the defendants to surrender all or a significant portion of their remaining assets.  *See* Amicus Br. at 18-19.  These cases, however, are inapposite.  *Circa Direct* involved a disgorgement order based on consumer loss rather than a civil penalty, and therefore involved a different calculation and policy considerations.  Moreover, the misrepresentations made in *Circa Direct* and *Civic Development Group* were central to the product or service being marketed to consumers.  *Circa Direct*, for example, alleged that respondents misled consumers into believing that the advertised weight loss products would cause substantial weight loss.  Compl. ¶¶ 15-27, *Circa Direct LLC*, No. 11-02172 (Apr. 8, 2011) ("Circa Direct Complaint").

Similarly, *Civic Development Group* involved allegations that respondents falsely told consumers that 100% of their charitable donations would go to the charity when, in fact, the charities received a small fraction of the donation.  Compl. ¶¶ 21-23, 44, *United States v. Civic Dev. Grp*, No. 07-04593(Sept. 24, 2007) ("CDG Complaint").  In such instances, the Commission routinely requires respondents to surrender their assets because all of the companies' revenues—and the attendant monetary losses suffered by consumers—are tied to respondents' deception.  *See, e.g.*, Circa Direct Compl. ¶ 28; CDG Compl. ¶ 69.  In contrast, there are no allegations that Google made a significant portion of its revenue from its alleged privacy violations, and the harm suffered by consumers is not based on the central characteristic of the product, which they received for free.  Moreover, the misrepresentations in both *Circa Direct* and *Civic Development Group* were made to all consumers who saw the advertising or received the telemarketing calls.  Here, only a small subset of Safari users who used Google's products and services saw the misrepresentation and were, accordingly, harmed.

Finally, Consumer Watchdog misrepresents how the Commission has described the settlement.  Specifically, it asserts that "the Commission admits that the size of the civil penalty

in the proposed order 'can be dismissed as inadequate.'"  *See* Amicus Br. at 1, 19.  What the

Commission actually said, however, is:

> We firmly believe that the Commission's swift imposition of a $22.5 million fine
> helps to promote such future compliance. With a company of Google's size,
> almost any penalty can be dismissed as insufficient.  But it is hardly
> inconsequential to impose a $22.5 million civil penalty when the accompanying
> complaint does not allege that the conduct at issue yielded significant revenue or
> endured for a significant period of time.

Comm'n Statement at 1-2.  When read in context, the Commission's statement underscores that

it balanced a number of factors in setting the civil penalty amount and was describing a potential

attack, not agreeing with it.

### 2.  Google's denial of liability does not impede the public interest.

Last, Consumer Watchdog alleges that the proposed stipulated order is not in the public

interest because it allows Google to deny violations of the order and liability for the claims.

Consumer Watchdog argues for an approach similar to that taken by the district court in *SEC v.*

*Citigroup*, 827 F. Supp. 2d 328, 332 (S.D.N.Y. 2011)—a dubious approach that has been widely

criticized and that has never been the law in this (or any other) circuit.  In *Citigroup*, Judge

Rakoff took the unprecedented step of rejecting a consent decree and ordering the parties to

proceed to trial simply because the consent decree did not contain an admission of liability by the

defendant.  The decision is on appeal, and the Second Circuit has not made a decision on the

merits.  However, the Second Circuit stayed Judge Rakoff's order requiring the parties to go to

trial pending appeal, finding it "strong[ly] likel[y]" to be overturned.  *SEC v. Citigroup Global*

*Mkts., Inc.*, 673 F.3d 158, 163 (2d Cir. 2012).  In issuing its stay, the Court described the idea

"that a court has the authority to demand assurance that a voluntary settlement reached between

an administrative agency and a private party somehow reflects the facts that would be

demonstrated at a trial" as a "doubtful proposition."  *Id.* at 166.  The Second Circuit's reasoning

suggests that following in Judge Rakoff's footsteps, and rejecting a consent decree because a

defendant does not admit liability in a settlement, would constitute impermissible overreaching.

*See id.*

UNITED STATES' RESPONSE TO AMICUS CURIAE                          3:12-cv-04177-SI

Indeed, over eighty years ago, the Supreme Court determined the contention that a consent decree "requires either admission or proof" of wrongdoing "ignores both the nature of injunctions . . . and the legal implications of a consent decree." *Swift & Co. v. United States*, 276 U.S. 311 (1928).  Thereafter, courts have consistently rejected the suggestion "that a finding of a constitutional or statutory violation [is] a necessary predicate to the entry of a consent decree." *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1015 (7th Cir. 1980) (citing *Swift*).  This Court's practice of entering consent decrees where fault is not admitted, and its policies favoring settlement, show that the district court's approach in *Citigroup* is not the law in this jurisdiction.  *See, e.g.*, *Turtle Island Restoration Network v. U.S. Dep't. of Commerce*, 834 F. Supp. 2d 1004 (D. Haw. 2011), *aff'd* 672 F.3d 1160 (9th Cir. 2012) (approving a consent decree involving a federal agency and in which an opposing party did not admit liability); *Arizona Oddfellow-Rebekah Hous. Inc. v. U.S. Dep't. of Hous. & Urban Dev.*, 125 F.3d 771, 773 (9th Cir. 1997); *SEC v. Olins*, 762 F. Supp. 1193, 1195 n.3 (N.D. Cal. 2011).

Moreover, Consumer Watchdog's argument ignores the fact that "[c]ompromise is the essence of a settlement," *Randolph*, 736 F.2d at 529-530, and that any settlement negotiation necessarily involves trade-offs.  Indeed, the Ninth Circuit has recognized that an agency may weigh any number of factors in determining whether a consent decree is in the public interest. *See id*.  That the Commission determined that the largest civil penalty for an order violation would deter future violations more effectively than other possible options—such as a less significant fine coupled with an admission of liability—is a policy decision well within the Commission's purview.[13]  Moreover, settling the case without the need to engage in costly litigation allows the Commission to use its resources on other enforcement priorities, which is a consideration only the Commission can adequately assess.

---

[13] Notably, a defendant's denial of liability is not unprecedented in FTC settlements.  *See, e.g.*, *FTC v. Skechers U.S.A., Inc.*, No. 12-cv-1214, (N.D. Ohio July 12, 2012); *FTC v. Reebok Int'l Ltd.*, No. 11-cv-2046 (N.D. Ohio Sept. 29, 2011).  Nor are denials of liability unprecedented for violations of an FTC order.  *See, e.g.*, *United States v. ChoicePoint, Inc.*, No. 06-cv-0198 (N.D. Ga. Oct. 14, 2009)*; United States v. Prochnow*, No. 02-cv-0917 (N.D. Ga. June 6, 2003).

Consumer Watchdog also suggests that the proposed order could have been valid if Google had made a statement that it neither admitted nor denied liability, instead of the affirmative disclaimer of liability contained in the proposed order.[14]  However, it does not explain how, exactly, a statement that "the agreement does not constitute an admission by any party that the law has been violated as alleged in the complaint" would deter future order violations or advance the public interest.  Amicus Br. at 22-23.  One court recently noted that a defendant denying liability versus a defendant not admitting liability has no effect on the public interest, calling the difference between the two "an exercise in semantics."  *Circa Direct LLC*, 2012 WL 3987610 (D.N.J., Sept. 11, 2012).

Finally, Consumer Watchdog argues that denial of liability confuses the public because it allows Google to "put its own 'spin' on the facts" and denies the public the opportunity of knowing whether Google violated its own privacy policy.  *See* Amicus at 23-24.  Again, Consumer Watchdog fails to articulate how a statement in which Google neither admits nor denies liability—the very approach amicus suggests the Commission should have taken—would change this outcome in any way.  In any event, the argument that a consent decree must conclusively establish the facts of the complaint to be in the public interest flies in the face of consent decrees without admissions of liability that have been approved in this jurisdiction.  *See, e.g.*, *Turtle Island Restoration Network*, 834 F. Supp. 2d 1004; *Arizona Oddfellow-Rebekah Hous.*, 125 F.3d at 773; *Olins*, 762 F. Supp. 2d at 1195 n.3.  Consumers and consumer groups seeking information on protecting themselves have access to the facts, as alleged by an independent federal agency, in the publicly available, detailed complaint.

Indeed, the only case Consumer Watchdog cites for its "truth-finding" argument is *Circa Direct*, 2012 WL 3987610 (D.N.J., Sept. 11, 2012).[15]  There, the FTC alleged that respondents

_____

[14] Consumer Watchdog also suggests that FTC regulations preclude an affirmative disclaimer of liability.  Amicus Br. at 22-23.  However, the regulation it cites, 16 C.F.R. § 2.32, applies to Commission administrative actions, not district court proceedings.

[15] At the same time, Consumer Watchdog attempts to distance itself from *Circa Direct* by "putting aside the larger question of whether consumers benefit from knowing the 'truth' of

misled consumers into believing that their products would cause substantial weight loss.  *Id.* at *1.  The court ultimately approved a consent decree containing a denial of liability, despite clearly having concerns about the public's interest in a public airing of the facts in the case.  *See id.*  In doing so, the court noted that it owed "substantial deference" to the FTC's determinations that settlement rather than litigation promoted an efficient use of agency resources, and that the damage amount obtained through settlement was adequate.  *Id.* at *6.[16]  Here, the Commission reasonably determined that the proposed order serves the public interest, and Consumer Watchdog fails to show otherwise.

**III.    Conclusion**

The United States respectfully reiterates its request that this Court enter the proposed stipulated order as an order of this Court.  The order is fair, adequate, and reasonable, and the FTC reasonably determined that it is in the public interest.

---

accusations in an FTC complaint" and instead focusing on "the truth of the accusations here regarding Google's fidelity to its own privacy policy."  Amicus Br. at 24.  This is a distinction without a difference: the central allegations in this case are that Google made misrepresentations in violation of a Commission order.

[16]  In *Circa Direct*, the court took the extraordinary step of amending the consent decree between the parties to require the FTC to post its investigatory materials on the internet.  *Id.* at *6 -*7.  Leaving aside the question of whether the *Circa Direct* court had the power to do so, *see United States v. Ward Baking Co.*, 376 U.S. 327 (1964) (holding a court cannot enter consent decree to which the parties have not consented), the United States notes that, in this case, independent press coverage has given the public access to many of the facts underpinning the complaint.  *See* Julia Angwin & Jennifer Valentino-Devries, Google's iPhone Tracking, Wall St. J. (Feb. 17, 2012), *available at* http://online.wsj.com/article/ SB10001424052970204880404577225380456599176.html.  To the extent truth-finding is ever an appropriate consideration in the entry of a consent decree—which the United States does not concede—it is not grounds for blocking the proposed order here.

1  **Date:** Sept. 28, 2012

2

3  **Of Counsel:**

4  JAMES A. KOHM
   Associate Director for Enforcement

5

6  LAURA KIM
   Assistant Director for Enforcement

7  ROBIN L. MOORE
   Attorney

8  MEGAN A. BARTLEY
   Attorney

9  Federal Trade Commission

10 Bureau of Consumer Protection
   Division of Enforcement

11 600 Pennsylvania Avenue, N.W.

12 Mail Drop M-8102B
   Washington, DC 20580

13 (202) 326-2167, rmoore@ftc.gov
   (202) 326-3424, mbartley@ftc.gov

14 (202) 326-2558 (fax)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Respectfully submitted:**

STUART F. DELERY
Acting Assistant Attorney General,
Civil Division

MELINDA HAAG (CABN 132612)
United States Attorney
for the Northern District of California

MAAME EWUSI-MENSAH FRIMPONG
(CABN 222986)
Deputy Assistant Attorney General, Civil
Division

MICHAEL S. BLUME (PA 78525)
Director, Consumer Protection Branch


   /s/ Adrienne E. Fowler
ADRIENNE E. FOWLER (member in
good standing of the New York bar)
Trial Attorney
Consumer Protection Branch
Department of Justice, Civil Division
450 5th St. NW, Suite 6400
Washington, DC 20530
(202) 514-9471
(202) 514-8742 (fax)
Adrienne.E.Fowler@usdoj.gov