LEO P. CUNNINGHAM, State Bar No. 121605
DAVID H. KRAMER, State Bar No. 168452
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:  (650) 565-5100
Email:  lcunningham@wsgr.com

Attorneys for Defendant
Google Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.:  3:12-cv-04177-SI |
| | ) | |
| Plaintiff, | ) | **RESPONSE TO CONSUMER** |
| | ) | **WATCHDOG AMICUS CURIAE** |
| v. | ) | **BRIEF** |
| | ) | |
| GOOGLE INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    BACKGROUND ................................................................................................... 2

     A.    The FTC's Complaint ............................................................................... 2

     B.    Disputed Issues Between the Parties ....................................................... 4

     C.    The Proposed Consent Order ................................................................... 4

III.   STANDARD OF REVIEW OF CONSENT ORDERS AND ROLE OF "PUBLIC INTEREST" DETERMINATION ......................................................................... 5

     A.    Standard of Review ................................................................................. 5

     B.    CW's Argument for a "Public Interest" Analysis is Incorrect ............... 7

IV.   NONE OF THE OBJECTIONS RAISED BY CW HAS MERIT ..................... 8

     A.    The Consent Decree Includes Injunctive Relief, and There is No Basis for CW's Request for Different Injunctive Relief ...................................... 9

     B.    The FTC's Determination that the Monetary Component is Fair, Adequate, and Reasonable should not be Disturbed ............................................... 10

     C.    There is No Basis to Require an Admission of Liability in a Consent Decree ..... 12

V.     CONCLUSION ................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Austin v. United States*, 509 U.S. 602 (1993)..................................................................... 12

*Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117 (D.C. Cir. 1983)......................... 15

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006) ....................................................... 8

*FTC v. Circa Direct LLC*, No. 1:11-cv-02172-RMB-AMD, 2012 WL 2178705
    (D.N.J. June 13, 2012)............................................................................................... 7, 13

*FTC v. Circa Direct LLC*, No. 1:11-cv-02172-RMB-AMD, 2012 WL 3987610
    (D.N.J. Sept. 11, 2012)............................................................................................. 7, 13

*In the Matter of Google Inc.,* FTC Docket No. C-4336 *(*August 9, 2012) *available
    at* http://www.ftc.gov/os/caselist/c4336/120809googlestatement.pdf. ........................ 5, 11

*K-2 Ski Co. v. Head Ski Co., Inc.*, 506 F.2d 471 (9th Cir. 1974) ................................... 9

*Maher v. Gagne*, 448 U.S. 122 (1980) ................................................................................ 14

*SEC v. Cioffi*, No. 08-cv-2457 (FB)(VVP), 2012 WL 2304274 (E.D.N.Y. June 18,
    2012)............................................................................................................................. 14

*SEC v. Citigroup Global Markets Inc.*
    673 F.3d 158 (2d Cir. 2012).................................................... 6, 7, 8, 9, 10, 12, 13, 14, 15

*SEC v. Citigroup Global Markets Inc.*, No. 11-5227 (2d Cir. May 14, 2012), Dkt.
    No. 145 ......................................................................................................................... 14

*SEC v. Randolph*, 736 F.2d 525 (9th Cir. 1984) ....................................................... 6, 7, 8, 13, 15

*SEC v. Wang*, 944 F.2d 80 (2d. Cir. 1991) ......................................................................... 15

*Swift & Co. v. United States*, 276 U.S. 311 (1928) .......................................................... 14

*United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409 (6th Cir. 1991).................... 8

*United States v. Cannons Eng'g Corp.*, 899 F.2d 79 (1st Cir. 1990).................................. 6

*United States v. Chevron U.S.A., Inc.*, 380 F. Supp. 2d 1104 (N.D. Cal. 2005)
    (Breyer, J.).................................................................................................................... 5

*United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275 (1st
    Cir. 2000) .................................................................................................................... 15

*United States v. Danube Carpet Mills, Inc.*, 737 F.2d 988 (11th Cir. 1984) ................... 11

*United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998) .............. 15, 16

*United States v. ITT Cont'l Baking Co.*, 420 U.S. 223 (1975)..................................... 14

-ii-

*United States v. Morgan Stanley,* No. 11-cv-06875 (WHP), 2012 WL 3194969 (S.D.N.Y. Aug. 7, 2012) ............................................................................................ 14

*United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007 (N.D. Cal. 2011) (Illston, J.) ................................................................................................................... 5, 6, 13

*United States v. State of Or.*, 913 F.2d 576 (9th Cir. 1990) ........................................ 5, 6

**STATUTES**

15 U.S.C. § 45(l) ............................................................................................... 2, 10, 11

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) ................................................... 7, 10

**MISCELLANEOUS**

http://www.consumerwatchdog.org/newsrelease/ftc%E2%80%99s-expected-record-225-million-fine-google-praised-consumer-watchdog .......................................... 11

1    **I.      INTRODUCTION**

2          In the Complaint in this action, the FTC asserts that alleged misrepresentations by Google

3    relating to the placement of "cookies" on Safari browsers violated an earlier consent decree

4    between Google and the FTC.  Google denies the allegations, and believes that there is no basis

5    on which to penalize Google for the statements at issue.  Following an investigation by the FTC

6    and lengthy negotiations, the parties have now reached a settlement of the claims.  As is

7    routinely the case when a government regulator resolves an investigation by settlement, the

8    parties have submitted a proposed consent decree for entry by the Court.  The settlement is

9    satisfactory to both parties, and is fair, reasonable and adequate.

10          Non-party Consumer Watchdog ("CW") argues that the Court should reject the

11   settlement because it fails to comport with CW's view of how the public interest would best be

12   served in this matter.  But CW is wrong in urging the Court to conduct a wide-ranging,

13   independent public-interest assessment of the settlement before approving it.  Controlling law

14   requires deference to the FTC's determination of the settlement's appropriateness, and provides

15   that a consent decree must be approved absent some showing that it is unfair, inadequate or

16   unreasonable.  No such showing has been or could be made here.  The settlement reflects an

17   arms-length agreement between sophisticated parties who recognize the expense and risks of

18   litigation and have chosen to compromise their dispute.

19          CW asserts three bases for opposing the settlement.  It claims the consent decree is

20   deficient because: (1) it includes no injunctive relief; (2) the monetary component is inadequate;

21   and (3) it lacks an admission of liability from Google.  None of these positions is sound.

22          First, the consent decree does include injunctive relief, albeit not the relief that CW

23   favors.  Second, the agreed-upon monetary settlement is substantial.  The FTC has claimed it is

24   the highest amount that has ever been imposed for an alleged violation of an FTC administrative

25   order.  Google submits it is considerably more than the FTC could have hoped to recover if this

26   matter had been litigated.  In any event, the FTC has concluded the monetary payment is

27   appropriate, and its determination should not be second-guessed.  Third, CW offers no legal

28   support for its demand that a consent decree must include an admission of liability by the

1  defendant.  To the contrary, all applicable legal authority confirms that consent decrees are and

2  should be routinely approved without an admission of liability.

3  Ultimately, CW's submission is simply an expression of CW's preference for different

4  settlement terms between the FTC and Google.  Under the controlling legal standard in the Ninth

5  Circuit, however, CW's preference is not relevant.  Under the proper standard, according due

6  deference to the FTC's decision to settle, the proposed consent decree is appropriate and should

7  be approved.

8  **II.    BACKGROUND**

9  CW includes a purported "Statement of Facts" in its submission that has no proper place

10  in an amicus brief.  The "facts" set forth by CW are better described as inflammatory accusations

11  and innuendo, sourced primarily to hearsay news stories and websites, and are not evidence.

12  Most of the discussion in the "Statement of Facts" (and roughly a third of the overall brief)

13  addresses unrelated past legal disputes that have no bearing on the circumstances of the

14  Complaint filed by the FTC in this action.  The Complaint, authored by the FTC after an

15  extensive investigation into the alleged misrepresentations, sets forth the allegations that are

16  actually at issue on the motion for entry of the consent decree.

17  **A.    The FTC's Complaint**

18  The Complaint, brought under 15 U.S.C. § 45(l), alleges Google's noncompliance with a

19  prior FTC consent order that was entered in October 2011 relating to the Google "Buzz" service

20  (the "Buzz Order").  While Google disagrees with many of the Complaint's allegations, fairly

21  read the FTC alleges as follows:

22  Targeted online advertising uses information from small text files placed in browsers

23  called "cookies."  Compl. ¶¶ 17-18.  Google uses one such cookie, the "DoubleClick Advertising

24  Cookie," to serve targeted advertisements to web browsers visiting websites that use Google's

25  advertising services.  *Id.* ¶ 23.  Google allows users to opt out of DoubleClick Advertising

26  Cookies.  *Id.* ¶ 32.  While most major web browsers accept advertising cookies by default, the

27  FTC contends that the default in Apple Inc.'s Safari web browser generally blocks the receipt of

28  "third-party cookies" such as the DoubleClick Advertising Cookie.  *Id.* ¶ 29.  In 2009, Google

1    posted a sentence to its Help Center website explaining that leaving the Safari browser in its

2    default setting would effectively accomplish the same thing as affirmatively opting out of

3    DoubleClick Advertising Cookies.  *Id*. ¶ 37.

4        In 2011, Google introduced another type of cookie (termed the "Initial Cookie" in the

5    Complaint) used in connection with a different type of online advertising.  *Id*. ¶ 42.  After this

6    Initial Cookie was set on Safari browsers, a technical exception that Apple built into Safari's

7    third-party cookie handling caused the browser to accept rather than block the DoubleClick

8    Advertising Cookie.  *Id*. ¶¶ 42-43, 46.  Google's Help Center posting, the FTC alleges, was not

9    accurate because it failed to explain that DoubleClick Advertising Cookies could be set in Safari

10   browsers in circumstances where a user that had affirmatively opted-out would not receive them.

11   *Id*. ¶¶ 49-50; 52-53.  This inaccuracy, in turn, allegedly violated the provisions of the Buzz Order

12   that prohibit certain misrepresentations about handling certain types of information.[1]  *Id*. ¶¶ 49-

13   54.

14       There are a number of things that the FTC Complaint does *not* allege.  It does not allege

15   that Google intentionally designed Initial Cookies with the understanding or belief that they

16   would allow DoubleClick Advertising Cookies to be set in Safari browsers.  It does not allege

17   that consumers suffered any monetary harm or injury from any additional DoubleClick

18   Advertising Cookies that were set.  It also does not allege that Google obtained any appreciable

19   monetary benefit from setting any additional DoubleClick Advertising Cookies.  It includes no

20   allegation as to *when* Apple changed the Safari browser to implement the exception to third-party

21   cookie handling at issue, nor when Google's Help Center posting was published in relation to

22   that change.

23

24

25

26

---

27   [1] The FTC also alleges in the Complaint that the Help Center statement was a violation of the Buzz Order's requirement that Google accurately characterize its compliance with the guidelines of the Network Advertising Initiative (NAI), an industry trade organization.  Compl. ¶¶ 55-57.

28

1

### B.      Disputed Issues Between the Parties

2              If the FTC's complaint were actually litigated, there would be a host of legal and factual

3    issues in dispute.  For example, the parties would undoubtedly offer different interpretations of

4    many provisions of the Buzz Order, including both its definitions and prohibitions.  The impact

5    of the statements at issue on consumers and Google itself would likewise be contested, as might

6    Google's intent in presenting them.  There is also substantial disagreement between the parties

7    regarding the appropriate penalty, if any, that would be available in these circumstances given

8    the FTC's statutory authority and its precedents.  Litigation could require extensive third party

9    discovery.  It would be expensive, time-consuming and would carry risks for both sides.

10            ### C.      The Proposed Consent Order

11            Given Google's disagreement with many aspects of the FTC's complaint, Google's

12   decision to settle is a compromise of the dispute with the FTC rather than an admission of the

13   truth of the FTC's allegations.  Consequently, the proposed consent decree includes an express

14   statement that Google denies liability.  Proposed Stip. Order ¶ 2.  The proposed consent decree

15   further provides for a monetary payment of $22.5 million (which the FTC has stated is the

16   largest amount it has ever obtained for an alleged or actual violation of a consent order),

17   injunctive relief requiring Google to maintain systems to expire cookies placed on Safari

18   browsers, and compliance reporting.  *Id*. §§ I-III.

19            The FTC thoughtfully considered and addressed the issue of whether the resolution with

20   Google was appropriate even in light of Google's denial of liability.  In so doing, the FTC was of

21   course fully aware of its other past investigations of Google.  The FTC voted 4-1 to enter into the

22   settlement with Google, with one commissioner dissenting based upon the presence of the denial

23   of liability provision in the agreement.  The Commissioners who voted to approve the settlement

24   explained in their statement that the significant monetary payment "signals to Google and other

25   companies that the Commission will vigorously enforce its orders," and that the payment "is

26

27

28

1  hardly inconsequential . . . when the accompanying complaint does not allege that the conduct at

2  issue yielded significant revenue or endured for a significant period of time."[2]

3  **III.   STANDARD OF REVIEW OF CONSENT ORDERS AND ROLE OF "PUBLIC INTEREST" DETERMINATION**

4

5        **A.   Standard of Review**

6        CW misstates the applicable legal standard for review of a consent decree.  It suggests

7  that the governing standard calls upon the Court to conduct an independent, broad-ranging

8  determination of the "public interest."  But in the Ninth Circuit, the sort of inquiry contemplated

9  by CW is not within the scope of a District Court's review of a consent order.  Rather, the Ninth

10  Circuit has clearly set forth a standard of review that is quite narrow, and that requires significant

11  deference to an agency's determination to enter into a settlement of disputed claims.

12        As this Court explained in a recent ruling:

13        A court reviews a consent decree to determine whether it is "fundamentally fair,
   adequate and reasonable."  The Court must evaluate both the procedural and

14        substantive fairness of the consent decree.  In addition, while a consent decree
   "must conform to applicable laws . . . [it] need not impose all the obligations

15        authorized by law."

16  *United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1024 (N.D. Cal. 2011) (Illston, J.)

17  (citing *United States v. State of Or.*, 913 F.2d 576, 580 (9th Cir. 1990); *United States v. Chevron*

18  *U.S.A., Inc.*, 380 F. Supp. 2d 1104, 1110-11 (N.D. Cal. 2005) (Breyer, J.)).  To determine

19  procedural fairness, courts assess whether the negotiation process was "fair and full of

20  adversarial vigor."  *Chevron*, 380 F. Supp. 2d at 1111 (citation omitted).  If the decree was the

21  product of good faith, arms-length negotiations, it is "'*presumptively* valid and the objecting

22  party has a heavy burden of demonstrating the decree is unreasonable.'"  *Id*. (quoting *Oregon*,

23  913 F.2d at 581) (emphasis added).  Here, CW offers no basis on which to conclude that the

24  negotiations were not adversarial, arms-length negotiations, which in fact they were.

25

26

27      [2] *See* Statement of the Commission, *In the Matter of Google Inc.,* FTC Docket No. C-4336,
   (August 9, 2012) *available at* http://www.ftc.gov/os/caselist/c4336/120809googlestatement.pdf.

28

1    With respect to substantive fairness, the Ninth Circuit has held that "[u]nless a consent

2    decree is unfair, inadequate, or unreasonable, it ought to be approved." *SEC v. Randolph*, 736

3    F.2d 525, 529 (9th Cir. 1984); *see also Oregon*, 913 F.2d at 580-81 ("A court reviews a consent

4    decree to determine whether it is 'fundamentally fair, adequate and reasonable.'").  While CW

5    seeks to interpose a further separate and distinct requirement that the proposed decree must also

6    be in the "public interest," CW significantly overstates the import of this factor (to the extent it is

7    properly considered as a separate factor at all).  As *Randolph* makes clear, consideration of the

8    "public interest" is no different than consideration of reasonableness:

9        We do not question the appropriateness of a requirement that the decree be in the
         public interest.  . . . That does not mean, however, that the district court should have
10        conditioned approval of the consent decree on what it considered to be the public's
         *best* interest. Instead, the court should have deferred to the agency's decision that
11        the decree is appropriate and simply ensured that the proposed judgment is
         reasonable.

12

13   *Randolph*, 736 F.2d at 529.  In the Ninth Circuit, review of a consent decree must give due

14   deference to the agency's decision to enter into a settlement, and any public interest

15   considerations are satisfied by a finding that the proposed terms are reasonable. *Id*.

16       Consequently, the scope of review is quite narrow, in deference to an executive agency's

17   determination to settle.  *Randolph*, 736 F.2d at 529 (District Court "should have deferred to the

18   agency's decision that the decree is appropriate and simply ensured that the proposed judgment

19   is reasonable"); *see also SEC v. Citigroup Global Markets Inc.*, 673 F.3d 158, 164 (2d Cir. 2012)

20   ("the scope of a court's authority to second-guess an agency's discretionary and policy-based

21   decision to settle is at best minimal.").  The Court's limited role in reviewing a consent decree is

22   such that "the Court does not determine whether 'the settlement is one which the court itself

23   might have fashioned, or considers ideal.'"  *Pac. Gas & Elec.*, 776 F. Supp. 2d at 1025 (quoting

24   *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990)).  Rather, "'[t]he court

25   need only be satisfied that the decree represents a reasonable factual and legal determination.'"

26   *Id*. (citing *Oregon*, 913 F.3d at 581).

27

28

1

**B.      CW's Argument for a "Public Interest" Analysis is Incorrect**

2          As CW itself acknowledges, the legal standard it relies upon is drawn from "a couple of

3   cases in other circuits" (CW Br. at 13), and not the controlling Ninth Circuit precedent that must

4   be applied here.[3]  As CW further admits, courts "in this district [have] explained the standard

5   somewhat differently" (*id.*) – because, of course, courts in this district are bound by Ninth Circuit

6   law.  Thus, CW's primary reliance on a case from the District of New Jersey, which "considers

7   the 'public interest' prong of the standard to be broader than the other three requirements," is

8   manifestly misplaced.  *Id.* (citing *FTC v. Circa Direct LLC*, No. 1:11-cv-02172-RMB-AMD,

9   2012 WL 2178705 (D.N.J. June 13, 2012)).

10         In *Circa Direct*, the District Court applied a distinct public interest factor when reviewing

11  a proposed FTC consent order under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b).  The court

12  was of the view that the "fairness, adequacy, and reasonableness" prong was separate from a

13  "public interest" prong, because "the former refers only to the fairness, adequacy, and

14  reasonableness of the settlement as between the parties, while the latter contemplates broader

15  consideration of the agreement's [e]ffect on non-parties (*i.e.* the public)."  *Id.* at *5 n.5.  Such a

16  view, however, is not consistent with the law of this Circuit, as set forth in *Randolph*, that a

17  public interest factor is not meaningfully distinct from the reasonableness inquiry.  *Randolph*,

18  736 F.2d at 529.  In any event, as set forth more fully below, the *Circa Direct* court ultimately

19  approved the proposed consent order at issue even under a public interest analysis.  *FTC v. Circa*

20  *Direct LLC*, No. 1:11-cv-02172-RMB-AMD, 2012 WL 3987610 (D.N.J. Sept. 11, 2012)

21  (conditionally approving proposed FTC consent decree).

22         In its request to file an amicus brief, CW also relied heavily on the *SEC v. Citigroup* case

23  now pending in the Second Circuit, which it portrayed as an important legal development that the

24  Court should consider.  *See* Mot. for Leave to File Amicus at 3-4.  CW even took the parties in

25

26  _____

27      [3] CW conspicuously omits any mention in its brief of *Randolph*, the leading Ninth Circuit decision on the standard of review for consent orders and the role of "public interest" therein.
28  *Randolph*, 736 F.2d at 529.

1   this case to task for failing to acknowledge this case or to direct the Court to it.  *Id*. at 3.  Yet, in

2   the amicus brief as filed, CW does an about-face, and does not rely on *Citigroup* at all.  Instead,

3   CW only mentions *Citigroup* in passing in a footnote in an attempt to distinguish it.  CW Br. at

4   14 n.39.  That is perhaps because CW belatedly recognized that the appellate court in *Citigroup*

5   strongly disapproved of the sort of broad "public interest" inquiry that CW endorses here.

6        In *Citigroup*, the Second Circuit stayed the District Court's refusal to approve a consent

7   decree with the SEC on the ground that the settlement was not in the public interest.  673 F.3d

8   158.  In so doing, it was dubious of the District Court's assertion of a free-standing public

9   interest requirement.  The District Court had found that the public interest is a factor in any grant

10  of injunctive relief, citing cases such as *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006).

11  The Second Circuit disagreed, noting that such cases stand instead for the proposition that "when

12  a court orders injunctive relief, it should ensure that the injunction *does not cause harm* to the

13  public interest."  *Citigroup*, 673 F.3d at 163 n.1 (emphasis added).  That is very different from

14  the requirement that CW advocates of an affirmative finding that the public interest will be

15  promoted by a consent decree.  And CW does not assert that any relief in the consent decree

16  would harm the public interest.

17       Under applicable precedent, the Court should review the fairness, reasonableness, and

18  adequacy of the proposed consent decree in light of the presumption of reasonableness and the

19  deference to be accorded to agency determinations.  *See Randolph*, 736 F.2d at 529; *see also*

20  *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) ("In evaluating

21  the decree, it is not our function to determine whether this is the best possible settlement that

22  could have been obtained, but only whether it is fair, adequate and reasonable.").  According to

23  the Ninth Circuit, the Court need not examine a separate public interest factor, although CW fails

24  to show that the settlement here would not be in the public interest in any event.

25  **IV.    NONE OF THE OBJECTIONS RAISED BY CW HAS MERIT**

26       CW objects to three aspects of the proposed consent decree that CW claims are grounds

27  for rejection of the settlement under its view of the public interest: (1) the alleged lack of

28

-8-

1   injunctive relief; (2) the amount of the monetary compensation; and (3) the lack of an admission

2   of liability.  CW's arguments are without merit.

3       A.      **The Consent Decree Includes Injunctive Relief, and There is No Basis for CW's Request for Different Injunctive Relief**

4

5           CW objects that the proposed consent order does not include injunctive relief.  CW Br. at

6   1 ("no permanent injunction is included in the order").  That is not accurate: the consent order

7   includes an injunction requiring Google to maintain systems to expire cookies through February

8   15, 2014.[4]  Proposed Stip. Order at 3.  CW's actual objection, then, is that that proposed consent

9   order does not include the specific injunctive relief that CW would have preferred.

10          CW argues that the proposed consent decree should include an injunction that prohibits

11  Google from violating the Buzz Order.  It claims that the FTC should have insisted on this

12  remedy in the consent order because the Complaint includes a request for it.  CW Br. at 16.  CW

13  views it as "suspicious" that the Complaint sought this relief, but it was not ultimately embodied

14  in the proposed consent order.  *Id*.  But in the same breath, CW acknowledges that, in a

15  settlement, one does not expect "every minor relief element in the complaint to be included in

16  the proposed order."  *Id*. at 17.  CW even acknowledges that several of the elements of requested

17  relief in the Complaint, including the prayer for attorneys' fees, are not included in the consent

18  decree.  *Id*.  Thus, CW agrees that a consent order is not objectionable simply because it does not

19  grant all the relief sought in a complaint.  Indeed, the very nature of a settlement of a disputed

20  claim is such that it results in a compromise, in which the plaintiff obtains less than all relief

21  requested.  *Citigroup*, 673 F.3d at 163, 166 (regulator's decision to "settle for less" than it might

22

23

---

24          [4] CW dismisses the injunctive relief in the consent order as not really qualifying as a "permanent injunction" because it lasts through February 15, 2014 and therefore is not

25  "permanent."  CW Br. at 16.  Of course, the phrase "permanent injunction" does not necessarily mean "an injunction of infinite duration," as CW erroneously asserts.  A "permanent injunction"

26  is an injunction entered as part of a judgment, as distinguished from a "preliminary injunction" issued at the outset of a case; it need not be perpetual in duration.  *See, e.g.*, *K-2 Ski Co. v. Head*

27  *Ski Co., Inc.*, 506 F.2d 471 (9th Cir. 1974) (remanding case to district court to determine whether permanent injunctions remaining in force for one year and two years were *too long* in duration).

28

1    have otherwise obtained is not objectionable because "[a] settlement is by definition a

2    compromise").

3        CW then argues that an injunction against future violations of the Buzz Order should

4    nevertheless be included because it is purportedly "the most important element of relief,"

5    whereas other items sought in the Complaint were supposedly unimportant. *Id*. This sort of

6    subjective ordering of remedies, however, is exactly what the FTC evaluates in negotiating and

7    deciding upon the terms of the consent order to which it is willing to agree. The FTC's view of

8    what remedies are most important from a regulatory and enforcement perspective is to be given

9    substantial deference, and CW offers nothing to undermine the FTC's determination here.

10       Google remains subject to the Buzz Order, even without the additional injunction

11   advocated by CW that would require Google to abide by it. CW is wrong in suggesting that in

12   the event of a future violation, the FTC purportedly "must start from scratch" because "Google

13   can (and likely will) deny liability again." *Id*. at 17-18. In the event of a future alleged violation,

14   the FTC need not "start from scratch"; it would (as this action demonstrates) be able to pursue

15   relief for alleged violation of the Buzz Order under 15 U.S.C. § 45(l), which carries the prospect

16   of significant penalties.

17       CW's objection that different injunctive relief that it prefers should be included in the

18   consent order is entirely without basis.

19   **B.    The FTC's Determination that the Monetary Component is Fair, Adequate,
            and Reasonable should not be Disturbed**

20

21       In the FTC's estimation, the $22.5 million monetary payment required by Google in the

22   consent decree represents the largest amount the FTC has ever obtained for an alleged or actual

23   violation of a consent order. The proposed payment far exceeds penalties that the FTC has

24   collected in similar cases,[5] and for that reason is clearly adequate. That is particularly so in a

25

26   _____

27       [5] CW briefly attempts to argue that this case should be compared to other cases in which the
     FTC fined defendants an amount equal to all the defendant's assets. CW Br. at 18-19. But the
     case cited by CW was brought under a different statute with different penalties available (15
28   U.S.C. § 53(b) instead of 15 U.S.C. § 45(l)), and further was brought against defendants who
                                                                                    (continued...)

1   case where, as here, the Complaint did not allege any monetary harm to consumers, nor did it

2   allege the existence of any benefit to Google caused by the alleged violation.  *See, e.g.*, *United*

3   *States v. Danube Carpet Mills, Inc.*, 737 F.2d 988, 993 (11th Cir. 1984) (factors in determining

4   monetary penalty in litigation include harm to consumers and benefit to defendant).  The

5   payment required under these circumstances will undoubtedly have a deterrent effect on

6   companies that might otherwise doubt the FTC's enforcement powers.  Indeed, CW itself has

7   proclaimed that the monetary payment sends a "strong message" that such enforcement will be

8   pursued and carried out.[6]

9       CW is incorrect when it claims that the required monetary compensation should be

10  greater in light of Google's total net worth.  On this point, CW repeatedly mischaracterizes a

11  statement of the FTC Commissioners who voted to approve the settlement.  CW claims that the

12  Commissioners conceded that the $22.5 million payment in the consent order "'can be dismissed

13  as insufficient.'"  CW Br. at 1, 18-19.  CW takes this statement out of context.  In the full

14  statement, the Commissioners actually explained why an argument based on the defendant's net

15  worth is not persuasive:

16          We firmly believe that the Commission's swift imposition of a $22.5 million fine
            helps to promote such future compliance.  With a company of Google's size,
17          almost any penalty can be dismissed as insufficient.  But it is hardly
            inconsequential to impose a $22.5 million civil penalty when the accompanying
18          complaint does not allege that the conduct at issue yielded significant revenue or
            endured for a significant period of time.  This settlement is intended to provide a
19          strong message to Google and other companies under order that their actions will
            be under close scrutiny and that the Commission will respond to violations quickly
20          and vigorously.[7]

21

22

_____

23          (...continued from previous page)

24  allegedly ran a fraudulent, fly-by-night business that generated only ill-gotten gains.  Nothing
    here is remotely analogous.

25      [6] "FTC's Expected Record $22.5 Million Fine For Google Praised By Consumer Watchdog,"
    *available at* http://www.consumerwatchdog.org/newsrelease/ftc%E2%80%99s-expected-record-
26  225-million-fine-google-praised-consumer-watchdog (last visited Sept. 17, 2012).

27      [7] *See* Statement of the Commission, *In the Matter of Google Inc.,* FTC Docket No. C-4336,
    (Aug. 9, 2012), *available at* http://www.ftc.gov/os/caselist/c4336/120809googlestatement.pdf
28

-11-

1   The Court should give deference to the FTC's assessment of the adequacy of this payment, to

2   which the FTC has agreed with full knowledge of Google's financial position.

3        CW's argument that the monetary payment is small in light of Google's overall net worth

4   parrots an argument accepted by the District Court in *Citigroup*, which rejected the proposed

5   settlement in part because the fine was perceived as "pocket change" for a company the size of

6   Citigroup.  But the Second Circuit expressly disapproved of that portion of the District Court's

7   analysis, finding that the District Court had not accorded sufficient deference to the agency's

8   view of the adequacy of the fine, and instead simply "disagreed" with the SEC's assessment of

9   the adequacy of the monetary penalty.  *Citigroup*, 673 F.3d at 164.  That is exactly what CW

10  asks the Court to do here, and it would be equally improper.  In particular, the *Citigroup* court

11  emphasized that even if a fine could be viewed as relatively low by some standard, the court

12  must consider the "agency's discretionary assessment of its prospects of doing better or worse, or

13  of the optimal allocation of its limited resources." *Id*. at 165.[8]  Any evaluation of a monetary

14  component of a consent decree must employ the same agency deference.

15       **C.     There is No Basis to Require an Admission of Liability in a Consent Decree**

16       CW argues that the Court should reject a settlement where there is no admission of

17  liability from the defendant.  According to CW, "the public would benefit enormously if Google

18  were required to admit liability in order to settle this case."  CW Br. at 23.  Again, CW's

19  argument has no merit.  As discussed above, CW relies on a broad "public interest" analysis that

20  is not recognized in the Ninth Circuit, and that has also been expressly disapproved by the

21  Second Circuit in the recent *Citigroup* case.  CW also never explains what purported "benefit"

22  the "public" would receive from an admission of liability, other than to assert in conclusory

23  fashion that such a benefit would exist.  But most importantly, CW's position runs counter to all

24

25

26       [8] Of particular relevance here given the absence of harm to consumers is the constitutional
     scrutiny that would occasion a substantial financial penalty sought in litigation.  *See Austin v.*
27   *United States*, 509 U.S. 602 (1993) (Eighth Amendment prohibits excessive fines in both
     criminal and civil contexts).
28

1  precedent.  Courts have repeatedly found that a consent decree need not include an admission of

2  liability, and consent decrees such as the one at issue here are routinely approved.

3       The Second Circuit in *Citigroup* strongly disapproved of the District Court's decision to

4  reject a consent decree that lacked an admission of liability, precisely because such a position has

5  no legal basis:

6       The district court's reasoning was that the settlement must be deemed to be either
        insufficiently onerous or excessively onerous unless the liability of Citigroup had
7       been either proved or disproved at trial or one side or the other had conceded the
        issue.  This is tantamount to ruling that in such circumstances, a court will not
8       approve a settlement that represents a compromise.  It is commonplace for
        settlements to include no binding admission of liability.  A settlement is by
9       definition a compromise.  *We know of no precedent that supports the proposition
        that a settlement will not be found to be fair, adequate, reasonable, or in the public
10      interest unless liability has been conceded or proved and is embodied in the
        judgment.*  We doubt whether it lies within a court's proper discretion to reject a
11      settlement on the basis that liability has not been conclusively determined.

12 *Citigroup*, 673 F.3d at 166 (emphasis added).  Tellingly, CW chose not to cite this decision in

13 connection with its argument that a consent decree must include an admission of liability; CW's

14 silence in this regard speaks volumes.

15      CW's *Circa Direct* authority is likewise of no help.  The District Court there has now

16 conditionally approved the settlement between Circa Direct and the FTC, <u>without</u> an admission

17 of liability, requiring that the FTC set up a website to further publicize the settlement before it is

18 finally approved.  *Circa Direct*, 2012 WL 3987610.  The court in that case found that such a

19 website would allow for greater public access to the settlement terms and provide a means for

20 public evaluation and discussion of the FTC's claims.  *Id*.  In so doing, the District of New

21 Jersey employed an expansive scope of review (including a separate public interest

22 determination) that would not be permissible in the Ninth Circuit under *Randolph*.  The court's

23 action in *Circa Direct* requiring the publication of website as a condition of approval is also

24 inconsistent with the Ninth Circuit's clear direction that the District Court's role is *not* to

25 condition approval on what it considers to the public's best interest, or to attempt to fashion an

26 "ideal" settlement.  *See Randolph*, 736 F.2d at 529; *see also Pac. Gas. & Elec.*, 776 F. Supp. 2d

27 at 1025.  In accordance with controlling Ninth Circuit law, the consent decree, negotiated at

28

-13-

1  arms-length, is presumptively reasonable, and the FTC's expertise in crafting the terms of the

2  decree warrants substantial deference.

3         CW further asserts that it knows of only one case in which a consent decree to settle a

4  violation of a prior FTC order was approved without an admission of liability, and asserts "we

5  can find no others."  CW Br. at 23.  That is apparently because CW arbitrarily limits its

6  statement only to consent decrees that relate to alleged violations of prior FTC orders, rather than

7  consent decrees in general.  Such a limitation is meaningless because the standard for approval of

8  consent decrees is the same, regardless of the type of underlying claims alleged.  In fact, courts

9  routinely approve consent orders without admissions of liability.  For example, in its briefing

10 before the Second Circuit, Citigroup submitted a compendium of over 800 cases in which

11 consent decrees were approved *without* admissions of liability.  *See* Mot. to Supplement Record

12 on Appeal, *SEC v. Citigroup Global Markets Inc.*, No. 11-5227 (2d Cir. May 14, 2012), Dkt. No.

13 145.  Citigroup's counsel found no cases in which a consent decree included such an admission.

14 Br. of Defendant-Appellee-Cross-Appellant at 24-25, *SEC v. Citigroup*, Dkt. No. 144.  We

15 likewise have found none.  Thus, the admission of liability CW demands as a condition of

16 approval for the proposed consent decree is not merely unprecedented: there is a massive weight

17 of authority to the contrary.  *See, e.g.*, *Maher v. Gagne*, 448 U.S. 122, 126 n.8 (1980) ("As is

18 customary, the consent decree did not purport to adjudicate respondent's statutory or

19 constitutional claims.  Rather, it explicitly stated that '[n]othing in this Consent Decree is

20 intended to constitute an admission of fault by either party to this action.'"); *United States v. ITT*

21 *Cont'l Baking Co.*, 420 U.S. 223, 237 n.10 (1975) ("[c]onsent decrees and orders have attributes

22 both of contracts and of judicial decrees . . . and often admit no violation of law"); *Swift & Co. v.*

23 *United States*, 276 U.S. 311, 320 (1928) (approving consent decrees in which defendants did not

24 make admissions of facts or concessions of liability).[9]

25

26        [9] Recent decisions have expressly followed the appellate decision in *Citigroup* and
   approved settlements that did not contain admissions of liability.  *United States v. Morgan*
27 *Stanley*, No. 11-cv-06875 (WHP), 2012 WL 3194969, at *4 (S.D.N.Y. Aug. 7, 2012) ("the
   Second Circuit recently clarified that an admission of liability is not a prerequisite for judicial
28 approval of an agency settlement."); *SEC v. Cioffi*, No. 08-cv-2457 (FB)(VVP), 2012 WL
                                                                              (continued...)

1   The universal legal principle that consent decrees do not require admissions of liability

2   exists for good reason.  A rule requiring admissions of liability would be tantamount to a

3   presumption that the plaintiff's claims are meritorious, which is an assumption without basis.

4   *Citigroup*, 673 F.3d at 163 (District Court's analysis erroneously "prejudges the fact that

5   Citigroup had in fact misled investors, and assumes that the S.E.C. would succeed at trial in

6   proving Citigroup's liability").  As the D.C. Circuit observed in *U.S. v. Microsoft*, "[r]emedies

7   which appear less than vigorous may well reflect an underlying weakness in the government's

8   case, and for the district judge to assume that the allegations in the complaint have been formally

9   made out is quite unwarranted."  *United States v. Microsoft Corp.*, 56 F.3d, 1448, 1461 (D.C.

10  Cir. 1995).  Thus, to the extent CW argues that entry of the consent decree requires some

11  affirmation of the "truth" of the allegations in the FTC Complaint, its argument must be rejected.

12  A consent decree represents a compromise of disputed allegations, which is one of the

13  primary attributes of a settlement.  *Citigroup*, 673 F.3d at 166.  There is a strong policy in favor

14  of settlements, "particularly in very complex and technical regulatory contexts."  *United States v.*

15  *Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000) (affirming

16  entry of consent decree); *see also SEC v. Wang*, 944 F.2d 80, 85 (2d. Cir. 1991) (noting the

17  "strong federal policy favoring the approval and enforcement of consent decrees."); *United*

18  *States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 856 (2d Cir. 1998) ("fostering settlement is

19  an important Article III function of the federal district courts").  This policy also allows litigants

20  to resolve complicated matters with government agencies on fair and reasonable terms, and in a

21  manner that avoids wasteful litigation.  As the Ninth Circuit observed in *Randolph*, "[t]he use of

22  consent decrees encourages informal resolution of disputes, thereby lessening the risks and costs

23  of litigation."  736 F.2d at 528.  "Not only the parties, but the general public as well, benefit from

24  the saving of time and money that results from the voluntary settlement of litigation."  *Citizens*

(...continued from previous page)
2304274, at *8 (E.D.N.Y. June 18, 2012) (approving consent decree despite lack of an admission of liability in light of Second Circuit opinion in *Citigroup*; "Although the circuit court was careful to note that it was passing only on the likelihood of success on appeal, its reasoning was not equivocal in many respects.").

1  | *for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983); *see also Glens Falls*, 160

2  | F.3d at 856.  This strong federal policy should guide the Court in reviewing the proposed consent

3  | order here.

4  |        The record here leaves no doubt that the FTC fully vetted the question of approving a

5  | settlement containing a denial of liability.  The issue not only prompted a dissent but a statement

6  | from the four-commissioner majority explaining why the settlement was in the public interest.

7  | That considered determination is in line with all applicable authorities and at odds with none.

8  | There is no basis for upsetting it.

9  | **V.      CONCLUSION**

10 |        The proposed consent decree, arrived at through arms-length adversarial negotiations, is

11 | presumptively reasonable and deserving of substantial deference as a means of resolving what

12 | would otherwise be a vigorously contested matter.  The proposed consent decree includes

13 | injunctive relief and a monetary penalty that the FTC has found satisfactory and appropriate.

14 | Google's denial of liability as part of that settlement is unremarkable, overwhelmingly supported

15 | by precedent, and a central aspect of the agreement that the FTC voted to approve.  Given the

16 | substantial monetary payment and remedial provisions imposed, there can be no doubt that the

17 | consent decree meets the applicable standards of fairness, adequacy, and reasonableness, and

18 | Google respectfully requests that the Court approve it.

19 |

20 | Dated:  September 28, 2012                    WILSON SONSINI GOODRICH & ROSATI
                                                   Professional Corporation

21 |

22 |                                               By:      */s/ Leo P. Cunningham*
                                                       Leo P. Cunningham
                                                       lcunningham@wsgr.com

23 |

24 |                                               Attorneys for Defendant
                                                   Google Inc.

25 |

26 |

27 |

28 |