IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>GOOGLE INC.,<br><br>    Defendant.                               / | No. CV 12-04177 SI<br><br>**ORDER APPROVING STIPULATED ORDER FOR PERMANENT INJUNCTION AND CIVIL PENALTY JUDGMENT** |

On August 8, 2012, the United States filed a complaint alleging that Google Inc. ("Google") violated a consent order with the Federal Trade Commission ("FTC"). The next day, Google and the United States filed a Proposed Stipulated Order for Permanent Injunction and Civil Penalty Judgment ("Proposed Order"). The Court granted *amicus curiae* Consumer Watchdog leave to file a brief opposing the Proposed Order, and to file supplemental briefing. On November 16, 2012, the Court heard argument on the Proposed Order. Having carefully considered the arguments of counsel and the papers submitted, the Stipulated Order for Permanent Injunction and Civil Penalty Judgment is APPROVED, for the reasons set forth below.

## BACKGROUND

**1.    Factual Background**

This action arises from Google's alleged violation of a previous consent order with the FTC. In the prior action, the FTC alleged that when Google launched its social networking tool, Google Buzz, it used Gmail users' private information despite telling those users it would only use that information for Gmail services. Complaint ¶¶ 6-7. The FTC also alleged that Google misrepresented to its Gmail

users that it would not automatically enroll them in the Buzz network and that they could control what information would be public on their profiles. *Id.*

In October 2011, the FTC settled its Buzz investigation with Google through a consent order that prohibited Google from future misrepresentations regarding: (1) its collection and use of private information and its customers' control over that information; and (2) its membership and compliance with privacy or security programs. *Id.* at ¶ 8.

In the instant case, the FTC alleges that Google violated the first part of the Buzz consent order through the placing of cookies on users' computers without their knowledge. Google uses cookies to collect information from users' web browsing activity, and uses this information to tailor its advertisements. *Id.* at ¶¶ 17-22. Google allows users to opt out of these cookies through an "opt-out button" they can click in their preferences, or through downloading an "opt-out cookie" plugin. *Id.* at ¶ 33. Google does not offer the plugin to users of the Safari internet browser, but it assured users that the Safari default settings would block cookies. *Id.* at ¶¶ 36-40. The FTC alleges that Google overrode the Safari software that blocked cookies, and secretly collected cookies from Safari users. *Id.* at ¶¶ 41-48. The FTC alleges that the misrepresentations of collecting private information and using targeted advertisements violated the first part of the Buzz consent order. *Id.* at ¶¶ 49-54.

The FTC also alleges that Google violated the second part of the Buzz consent order. Google represents that it is a member of the Network Advertising Initiative ("NAI"), and in compliance with NAI's self-regulatory code of conduct. *Id.* at ¶¶ 15-17. NAI's code requires that members post notices specifying its data collection processes. *Id.* The FTC alleges that Google's use of Safari cookies without informing its users violated the NAI code, and thus violated the second part of the Buzz consent order. *Id.* at ¶ 55-57.

**2. The Proposed Order**

In the Proposed Order, Google and the United States stipulate that the Court has jurisdiction and that venue is proper. Google "denies any violation of the FTC Order," and states that it stipulates to the Proposed Order "freely and without coercion." The Proposed Order outlines three requirements for Google. First, Google must pay a civil penalty of $22.5 million. Second, until February 15, 2014,

2

1 Google must maintain systems that delete Google cookies from Safari browser users. Third, Google 2 must report to the FTC within twenty days of February 15, 2014, setting forth how it is in compliance 3 with the Proposed Order.

4 *Amicus curiae* Consumer Watchdog made three objections to the Proposed Order: (1) the 5 injunction is inadequate and not "permanent;" (2) the civil penalty of $22.5 million is too small; and (3) 6 Google should be forced to admit liability.

## LEGAL STANDARD

Approval of a proposed consent decree is within the discretion of the Court. *United States v. Oregon*, 913 F.2d 576, 580 (9th Cir. 1990). A court reviews a consent decree to determine whether it is "fundamentally fair, adequate and reasonable." *Id.* While a consent decree "must conform to applicable laws . . . [it] need not impose all the obligations authorized by law." *Oregon*, 913 F.3d at 580.

The Court's review of the proposed consent decree is informed by the public policy favoring settlement. *See United States v. Comunidades Unidas Contra La Contaminacion*, 204 F.3d 275, 280 (1st Cir. 2000). The Court also grants additional deference where the decree has been negotiated by a governmental agency that is an expert in its field and must act on behalf of the public interest. *United States v. Chevron*, 380 F. Supp. 2d 1104, 1111 (N.D. Cal. 2004). However, when reviewing a proposed consent decree, the Court must independently evaluate its terms and avoid giving a "rubber stamp approval." *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th Cir. 1995) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974)).

In applying the "fair, adequate and reasonable" standard, courts examine both procedural and substantive fairness. *United States v. Montrose Chem. Corp. of California*, 50 F.3d 741, 746 (9th Cir. 1995); *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir.1990); *Chevron*, 380 F. Supp. 2d at 1110-11. With regard to procedural fairness, courts determine whether the negotiation process was "fair and full of adversarial vigor." *United States v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994) (citations and internal quotations omitted). If the decree was the product of "good faith, arms-length negotiations," it is "presumptively valid and the objecting party has a heavy burden of

3

demonstrating the decree is unreasonable." *Oregon*, 913 F.2d at 581. However, "the district court must ensure that the agreement is not . . . a product of collusion . . . ." *United States v. Colorado*, 937 F.2d 505, 509 (10th Cir.1991).

With respect to substantive fairness, the district court does not determine whether "the settlement is one which the court itself might have fashioned, or considers ideal." *Cannons Eng'g Corp.*, 899 F.2d at 84. Instead, the "court's approval is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Oregon*, 913 F.2d at 581 (internal quotations omitted). "The court need only be satisfied that the decree represents a reasonable factual and legal determination." *Id.* (internal quotation omitted).

Consumer Watchdog argues that the Court's review must consider not just whether the settlement is "fair, adequate, and reasonable," but also, in regulatory settlements, whether the settlement promotes the public's interest. It cites to the FTC Act, which was amended to expressly empower the Commission to protect the public interest. *See* H.R. Rep. No. 75-1613 at 3 (1937); *see also Johnson Products Co. v. FTC*, 549 F.2d 35, 38 (7th Cir. 1977) ("The Commission, unlike a private litigant, must act in furtherance of the public interest."). The only case that Consumer Watchdog relies on for its proposition that there should be a separate public interest inquiry is a district court case from the Second Circuit, *FTC v. Circa Direct LLC*, CIV. 11-2172 RMB/AMD, 2012 WL 2178705 (D.N.J. June 13, 2012). However, the Second Circuit's law on the public interest prong is still in flux, and is currently not as broad as envisioned by the *Circa Direct* court. *See U.S. S.E.C. v. Citigroup Global Markets Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012) (finding that the district court should consider only whether the terms of the *injunctive provisions* do not harm the public interest, not whether the terms of the *entire settlement* harm the public's interest). More importantly, the Court finds that the law in the Ninth Circuit does not include a separate public interest inquiry. The Ninth Circuit has held that, even if a federal agency is required to serve the public's interest, the district court erred when it conditioned approval of a consent decree "on what it considered to be the public's *best* interest." *S.E.C. v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984) (emphasis in original). It found that "[i]nstead, the [district] court should have deferred to the agency's decision that the decree is appropriate and simply ensured that the proposed judgment is reasonable." *Id.*

4

## DISCUSSION

### 1. Procedural Fairness

For the procedural fairness prong, the Court looks to whether the consent decree was the product of "good faith, arms-length negotiations." *Oregon*, 913 F.2d at 581.

Here, the FTC conducted an independent investigation into Google's conduct before it began any settlement discussions. Declaration of Megan A. Bartley ("Bartley Decl.") ¶ 2. It was the FTC, not Google, which drafted the initial Proposed Order. *Id.* at ¶ 3. The FTC and Google engaged in extensive negotiations that lasted over two months, and they debated the details of the settlement almost daily. *Id.* at ¶ 4; *see United States v. Pac. Gas & Elec.*, 776 F. Supp. 2d 1007, 1025 (N.D. Cal. 2011) (upholding procedural fairness when negotiations lasted 90 days). The FTC negotiated over every substantive provision based on what it determined was in the public's best interest. Bartley Decl. ¶¶ 5, 7-8.

Because of the length and vigor of the negotiations and the arms-length process in which they were conducted, the Court finds that there was procedural fairness in the negotiation of the Proposed Order.

### 2. Substantive Fairness

If the court finds that there was procedural fairness, then the consent decree is "presumptively valid and the objecting party has a heavy burden of demonstrating the decree is unreasonable." *Oregon*, 913 F.2d at 581. Consumer Watchdog attacks the substantive fairness of the Proposed Order, arguing that the injunction is inadequate, the civil penalty is too small, and that Google should be forced to admit liability.

#### A. Adequacy of the Injunction

Consumer Watchdog argues that the injunction in the Proposed Order is inadequate for several reasons. First, it argues that Proposed Order is inadequate because it fails to include a "permanent injunction," since the final remedial relief lasts only until February 15, 2014. However, a "permanent injunction" is merely an injunction that occurs after a final hearing on the merits, as distinguished from

1 a preliminary injunction. Black's Law Dictionary 855 (9th ed. 2009) ("Despite its name, a permanent
2 injunction does not necessarily last forever.").

3 Second, Consumer Watchdog argues that Google should be enjoined from further violating the
4 Buzz consent order. However, such an injunction is unnecessary and duplicative. The Buzz consent
5 order already prohibits Google future misrepresentations regarding its customers' private information.
6 The FTC has shown that it can enforce violations of the Buzz consent order, as it is doing in the instant
7 action. Because Google remains subject to the Buzz consent order, an injunction to prohibit future
8 violations of that order is unnecessary.

9 Third, Consumer Watchdog argues that the injunction is inadequate because it allows Google
10 to continue to profit from the information it has gathered from the Safari cookies. The injunction
11 requires Google to "expire" the cookies it set for Safari users in alleged violation of the Buzz consent
12 order. Consumer Watchdog argued in its supplemental reply brief[1] that the expiration of a cookie does
13 not necessarily delete the information contained on the cookie. Thus, although Google is enjoined from
14 collecting new information, it may still keep and use the information it has previously collected from
15 the Safari cookies.

16 At the hearing, both the FTC and Google asserted that these concerns had been considered and
17 dismissed in the course of negotiating the settlement. The parties state that Google would be unlikely
18 to use the information from the Safari cookies for several reasons. First, because the data is old, it
19 contains dated – or outdated – information of very low value. Further, Google has now "anonymized"
20 the IP addresses, and therefore the data cannot reliably be linked to individuals. More generally, the
21 FTC considered and rejected many more stringent injunctions because the risk that they would hamper
22 Google's ability to protect consumers from data security and malware vulnerabilities outweighed the
23 benefits to the public. Bartley Decl. ¶ 7. The FTC determined that the injunction it crafted "sufficiently
24 protects consumers from ongoing harm without exposing them to additional risks." United States'
25 Response to Consumer Watchdog's Amicus Curiae Brief 8. In such situations, "the courts should pay
26 deference to the judgment of the government agency which has negotiated and submitted the proposed

---

[1] Because this argument was first included in the reply brief, neither the United States nor Google had a chance to respond in briefing.

6

judgment." *Randolph*, 736 F.2d at 529 (citations omitted); *see also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 866 (1984).

The Court finds that the injunction is fair, adequate and reasonable. With the Buzz consent order in place, the injunction need only address the specific harm from the Safari cookies. Here, the injunction specifically requires Google to maintain systems to expire Safari cookies and creates a compliance reporting mechanism.

### B. Adequacy of the Civil Penalty

Consumer Watchdog argues that the civil penalty of $22.5 million is an insufficient amount to enforce compliance with the Buzz consent order. It argues that this is a *de minimis* amount of Google's advertising revenues. It also argues that the statutory maximum would be $16,000 for each violation, and thus could far exceed the $22.5 million. *See* Revised Reply Memorandum of Points and Authorities in Opposition to the Entry of [Proposed] Stipulated Order for Permanent Injunction and Civil Penalty 7 ("Even if one-tenth of one percent of Safari users saw the misrepresentation, the statutory penalty would exceed $3 billion.").

The FTC argues that the Commission's determination of an appropriate civil penalty is not just based on revenue or statutory penalties, but is a multi-faceted analysis. *See United States v. Danube Carpet Mills, Inc.*, 737 F.2d 988, 993 (11th Cir. 1984) (noting that the criteria for assessing the civil penalty should include "(1) the good or bad faith of the defendants; (2) the injury to the public; (3) the defendants' ability to pay; (4) the desire to eliminate the benefits derived by the violations; and (5) the necessity of vindicating the authority of the FTC"). According to the FTC, the $22.5 million fine is the largest fine ever imposed on a company for violating an FTC order. Moreover, the complaint never alleged that consumers suffered any monetary harm or that the Safari cookies yielded significant revenues for Google. Consumer Watchdog's citations to cases with larger penalties are unpersuasive to show that the proposed penalty is unreasonable. In *Circa Direct*, 2012 WL 2178705, the FTC's $18 million disgorgement order was based on consumer loss rather than a civil penalty, and the defendants were ordered to surrender all of their remaining assets because the FTC found that all of the company's revenue was tied to the fraud. Similarly, in *FTC v. Trudeau*, 579 F.3d 754, 762 (7th Cir. 2009), the

district court granted a monetary award of $37.6 million based on "a reasonable approximation of the loss consumers suffered as a result of defendant's deceptive infomercials." Unlike in *Circa Direct* or *Trudeau*, the instant case does not contain allegations of large amounts of consumer loss or Google profit.

Accordingly, Court finds that the civil penalty is fair, adequate and reasonable.

### C. Google's Denial of Liability

Finally, Consumer Watchdog argues that Google's denial of liability in the consent decree contravenes the public's interest. It alleges that the denial of liability allows Google to put its own spin on the facts, which will confuse consumers relying on its statements when making privacy choices.

However, Consumer Watchdog's position that a consent decree requires an admission of liability is contradicted by legal history and precedent. *See, e.g.*, *Swift & Co. v. United States*, 276 U.S. 311, 327 (1928) (finding that the contention that a consent decree could not be upheld because there was no admission of guilt "ignores both the nature of injunctions, already discussed, and the legal implications of a consent decree"). More recently, the Second Circuit strongly disapproved of a district court's rejection of a consent decree when that court's primary basis for the rejection was the lack of an admission of liability. *Citigroup*, 673 F.3d at 163-65 (finding that in requiring an admission of liability, the district court prejudged the merits of the case, assumed that the SEC could win at trial or that Citigroup would be willing to settle if it admitted liability, did not give deference to the SEC's policy judgment, and did not consider the agency's discretionary assessment of its prospects or of the optimal allocation of its limited resources). Moreover, as the Second Circuit noted, "[r]equiring such an admission would in most cases undermine any chance for compromise." *Id.* at 165.

The only case that Consumer Watchdog cites in support of its argument that the Proposed Order must have an admission of liability is *Circa Direct*, which noted that learning the truth of the defendants' alleged deceptive conduct may be an important matter of public concern. *Circa Direct*, 2012 WL 2178705 at *6. However, the *Circa Direct* court later approved the consent decree without an admission of liability, relying on *Citigroup* and giving deference to the FTC's determination that requiring admission of liability would force it to go to trial, which would result in a significant

8

expenditure of time and resources without much gain. *Fed. Trade Comm'n v. Circa Direct LLC*, CIV. 11-2172 RMB/AMD, 2012 WL 3987610 at *6-7 (D.N.J. Sept. 11, 2012). Moreover, as explained *supra*, the *Circa Direct* court based its reasoning on a separate public interest inquiry, which the Ninth Circuit does not follow. Indeed, courts in this circuit have upheld many agreements without an admission of wrongdoing, and Consumer Watchdog fails to cite a single case that does not. *See e.g.*, *Turtle Island Restoration Network v. U.S. Dept. of Commerce*, 834 F. Supp. 2d 1004 (D. Haw. 2011) *aff'd* 672 F.3d 1160 (9th Cir. 2012); *S.E.C. v. Olins*, 762 F. Supp. 2d 1193 (N.D. Cal. 2011); *see also Maher v. Gagne*, 448 U.S. 122, 126 n.8 (1980) (noting that "[a]s is customary, the consent decree . . . explicitly stated that "[n]othing in this Consent Decree is intended to constitute an admission of fault by either party to this action.")

Accordingly, Court finds the Proposed Order with Google's denial of liability to be fair, adequate and reasonable.

## CONCLUSION

For the foregoing reasons, the Court hereby finds that the Proposed Order is both procedurally and substantively fair, adequate, and reasonable. Accordingly, the Court APPROVES the Stipulated Order for Permanent Injunction and Civil Penalty Judgment. (Docket No. 3.)

**IT IS SO ORDERED.**

Dated: November 16, 2012

SUSAN ILLSTON
United States District Judge